IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | |
|---|---|
| **TIMOTHY V. BRANCH**, <br><br> Plaintiff, <br><br> v. <br><br> **FEDERAL DEPOSIT INSURANCE CORPORATION, as receiver for Tifton Banking Company**, <br><br> Defendant. | Civil Action No. 7:11-CV-45 (HL) |

## ORDER

This case is before the Court on Defendant Federal Deposit Insurance Corporation, as receiver for Tifton Banking Company's ("FDIC-R") Rule 12(b)(6) Motion to Dismiss (Doc. 22). For the reasons discussed below, the Motion to Dismiss is granted.

## I.   FACTS

According to Plaintiff's complaint, in 2005, Pat Hall, then-president of Tifton Banking Company ("the Bank"), on behalf of the Bank, entered into a verbal agreement with Plaintiff to participate in a real estate investment venture with a real estate investor/speculator named Ray Goodman, who was not affiliated with the Bank. Under the alleged agreement, Goodman would find residential rental property suitable for investment, and Hall, on behalf of the Bank, would finance the acquisition by making a loan to Plaintiff, as borrower. "There was no

partnership or other entity formed between Goodman, Plaintiff and Hall but just a verbal agreement to operate as described heretofore." (Compl., ¶ 8).

Pursuant to this verbal agreement, Plaintiff obtained several loans from the Bank to purchase residential properties. He also executed additional notes in substantial amounts for other property purchases. However, Goodman ceased participation in the venture, and Plaintiff eventually became delinquent in his debt service obligations to the Bank. Plaintiff contends that at that time Hall made various promises and agreements that modified the written terms of the Bank's loans to Plaintiff. But these alleged modifications were never put in writing or agreed to by the Bank's loan committee or board of directors. In the summer of 2010, the Bank began foreclosing on the various properties and liquidating certain assets Plaintiff put up as collateral for the loans.

On November 12, 2010, Tifton Banking Company was closed by the Georgia Department of Banking and Finance. The FDIC was named receiver.

On January 18, 2011, Plaintiff filed a complaint against Tifton Banking Company in the Superior Court of Tift County alleging breach of contract. Plaintiff seeks damages, attorney's fees, and litigation costs.

The FDIC-R, in its capacity as receiver of Tifton Banking Company, removed the case to this Court on April 13, 2011. Plaintiff filed a motion to remand the case to the Superior Court of Tift County. That motion was granted on July 19, 2011. The FDIC-R appealed the remand order to the Eleventh Circuit

Court of Appeals. In light of a July 2012 decision, the Eleventh Circuit vacated the remand order.

Once the mandate from the appellate court issued, the FDIC-R was directed to file an answer or other responsive pleading.[1] On September 26, 2012, it filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that Plaintiff has failed to state a claim for relief. Plaintiff did not file a response to the motion.

## II. ANALYSIS

### A. Standard of Review

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the facial sufficiency of a complaint. When considering a Rule 12(b)(6) motion to dismiss, the Court must accept as true all facts set forth in the plaintiff's complaint. Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252, 1260 (11th Cir. 2009). However, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007) (internal quotations, citations, and alterations omitted). To avoid dismissal, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Id. at 570.

---

[1] Under the Eleventh Circuit's order, the FDIC-R was substituted as the party-defendant at the time it filed its motion to substitute in the state court action. Thus, the FDIC-R is the proper defendant in this case.

In Ashcroft v. Iqbal, the Supreme Court held that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." 556 U.S. 662, 678, 129 S.Ct. 1937 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. In considering a motion to dismiss, the court should "(1) eliminate any allegations in the complaint that are merely legal conclusions; and (2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" Am. Dental Ass'n v. Cigna Corp., 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting Iqbal, 566 U.S. at 679). The court may also "infer from the factual allegations in the complaint 'obvious alternative explanation[s],' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer.'" Id. (quoting Iqbal, 556 U.S. at 682).

### B.    The D'Oench doctrine and 12 U.S.C. § 1823(e)

The FDIC-R argues that Plaintiff's breach of contract claim fails as a matter of law under the doctrine established by the Supreme Court in D'Oench, Duhme & Co. v. FDIC, 315 U.S. 447, 62 S.Ct. 676 (1942) (the "D'Oench doctrine"). The Court in D'Oench held that when the FDIC takes over a failed bank and its assets, the FDIC is not bound by agreements which are not in writing and are not contained in the bank's records. Id.; *see also* Murphy v. FDIC, 208 F.3d 959, 963 (11th Cir. 2000) (holding that as insurer of a bank's deposits, the FDIC is not

liable for "any obligation not specifically memorialized in a written document such that the agency would be aware of the obligation when conducting an examination of the institution's records") (quotation and internal quotation marks omitted); First Union Nat. Bank of Fla. v. Hall, 123 F.3d 1374, 1379 (11th Cir. 1997) (In D'Oench, "the Supreme Court held that the FDIC's interest in an asset it acquired from a failed bank could not be diminished by alleged 'agreements' not disclosed in the failed bank's records.") The purpose of "D'Oench and its progeny [is to] enable the FDIC, and the banks that acquire insolvent banks' assets from the FDIC, to make quick and accurate appraisals of the value of insolvent banks' assets by protecting the FDIC and its transferees against undisclosed agreements that would unexpectedly diminish the value of those assets." Hall, 123 F.3d at 1378-79.

The D'Oench doctrine has been codified at 12 U.S.C. § 1823(e), which provides:

> No agreement which tends to diminish or defeat the interest of the [FDIC] in any asset acquired by it under this section or section 1821 of this title, either as security for a loan or by purchase or as receiver of any insured depository institution, shall be valid against the [FDIC] unless such agreement --
>
> (A) is in writing,
>
> (B) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution,

    (C)    was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and

    (D)    has been, continuously, from the time of its execution, an official record of the depository institution.

12 U.S.C. § 1823(e)(1).

"Any agreement which does not meet the requirements set forth in section 1823(e) of this title shall not form the basis of, or substantially comprise, a claim against the receiver or the [FDIC]." 12 U.S.C. § 1821(d)(9)(A). The party claiming the adverse interest bears the burden of establishing that an agreement satisfies § 1823(e)(1)'s requirements. *See* FDIC v. Oldenburg, 34 F.3d 1529, 1551 (10th Cir. 1994); FDIC v. Singh, 977 F.2d 18, 26 (1st Cir. 1992).

"[C]ourts have found the aims of section 1823(e) and D'Oench identical and thus have construed defenses premised upon section 1823(e) and D'Oench in tandem." Twin Const., Inc. v. Boca Raton, Inc., 925 F.2d 378, 382 (11th Cir. 1991). Applying both § 1823(e) and D'Oench, it is clear that Plaintiff cannot pursue his claim against the FDIC-R. It is Plaintiff's burden to show that the § 1823(e) requirements are met, which he has not done. There are no allegations contained in the complaint reflecting the existence of any written and executed documentation as to the alleged loan modifications, and Plaintiff has not submitted any such writings in response to the motion to dismiss. Further, there are no allegations or evidence that the alleged modifications were approved by

the board of directors or the loan committee. Finally, there are no allegations suggesting that any properly executed loan modification agreement was contained in the official records of Tifton Banking Company.

## III.   CONCLUSION

Based on the foregoing, the FDIC-R's Motion to Dismiss (Doc. 22) is granted. Plaintiff's complaint against the FDIC-R is dismissed in its entirety.[2]

**SO ORDERED**, this the 26th day of November, 2012.

*s/ Hugh Lawson*
**HUGH LAWSON, SENIOR JUDGE**

mbh

---

[2] Plaintiff's claim as stated in his complaint is a breach of contract claim. However, if Plaintiff's claim could be read to include a tort claim, it still fails because the D'Oench doctrine also applies to tort claims. See OPS Shopping Ctr. v. FDIC, 992 F.2d 306, 310 (11th Cir. 1993).